## UNITED STATES v. MARKS & ROSENFELD, INC.

No. 4432.—Invoices dated Libochovice, Czechoslovakia, April 10, 1935, etc.
Certified April 30, 1935, etc.
Entered at New York May 13, 20, June 25, 1935.
Entry Nos. 824047, 826993, 840942.

## Second Division, Appellate Term

(Decided October 31, 1938)

*Webster J. Oliver*, Assistant Attorney General, for the appellant.
*Siegel & Mandell* (*Sidney Mandell* of counsel) for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This is an application for review brought by the United States from a judgment rendered in these appeals to reappraisement by Judge Sullivan as sitting judge, dated February 4, 1938, Reap. Dec. 4232. These reappraisements involved the dutiable value of certain oval relish dishes, composed of glass, exported from Libochovice, Czechoslovakia, during the months of April, May, and June, 1935.

In reappraisements 112288-A and 112289-A the merchandise was invoiced at 54 crowns per dozen pieces, f. o. b. Hamburg, less a cash discount of 2½ per centum, including charges for crates and packing 50 crowns per crate, and charges for freight from factory to Hamburg of 19.50 crowns per 100 kilograms gross weight. It was entered the same but the freight was deducted. The invoice was certified on April 30, 1935, and the date of entry was May 13, 1935, in reappraisement 112288-A. In reappraisement 112289-A the invoice was certified on May 8, 1935, and the date of entry was May 20, 1935.

In reappraisement 112290-A the merchandise was invoiced at 48 crowns per dozen, f. o. b. Hamburg, less a discount of 2 per centum, with the same charges for crate and packing and freight from factory to Hamburg as in the other two reappraisements, and entered the same but the freight was deducted. The invoice was certified June 12, 1935, and the date of entry was June 25, 1935.

In all of these cases the merchandise was appraised on the basis of foreign-market value at 72 Czechoslovakian crowns per dozen, packed, less 2½ per centum discount, less freight 16 Czechoslovakian crowns per hundred kilos.

At the opening of the trial plaintiff (appellee in this proceeding) conceded that the deductions covering the item of freight made by the appraiser were correct, saying:

* * * the proper dutiable value of a certain relish dish that appears on the invoices, described as item No. 1289, * * * which was invoiced at 54 crowns per dozen pieces, f. o. b. Hamburg, on the consular invoice certified April 30, 1935. * * * and we are contending that the proper dutiable value is as invoiced, *less the freight found by the appraiser* in his appraisement. This applies to reappraisement 112288-A; also to reappraisement 112289-A. [Italics ours.]

As to reappraisement 112290–A the same item was involved and counsel stated:

> The issue here is the same. We are contending that the invoice value (48 crowns per dozen) represents the foreign market value, and the discount in this particular case is a discount of 2 percent.

The following concession by attorney for appellee then appears on the record:

> It is conceded by the plaintiff that if the merchandise involved is first grade, first quality, regular quality, and not inferior merchandise, then the values found by the appraiser are correct.

The attorney for the appellant made the following concession:

> After conferring with Mr. Simonetti, the examiner of this merchandise, the Government concedes that in the event that the plaintiff establishes the fact that this merchandise was not first quality merchandise the entered values will be the correct dutiable values.

In view of the above-quoted concessions, the entire issue in this case, in our judgment, is whether or not these glass relish dishes, No. 1289, are first quality or an inferior quality of merchandise.

Judge Sullivan found in effect that the invoiced values in all these appeals to reappraisement, less freight of 16 Czechoslovakian crowns per 100 kilos, were the correct dutiable values of same.

The evidence in this case consists of the testimony of four witnesses for the appellee; Exhibit 1, a sample of the instant importations; Exhibit 2, a sketch of the imported articles; Exhibit 3, an affidavit executed by Zdenko Barta, Export Manager of the Glassworks of Libochovice; and Illustrative Exhibits B, C, D, and E, samples of glassware. The evidence introduced by the attorney for the appellant was the testimony of one witness, the examiner who examined and passed the instant merchandise; Exhibits 4 and 5, reports of the Treasury representative, Roy V. Fox, of date December 9th and December 10, 1935; and Illustrative Exhibits F, G, and H, samples of glassware.

Judge Sullivan, in our opinion, has given a fair and complete résumé of the oral testimony in this case and, in view of this, we do not deem it necessary to refer to the testimony as a whole, but we have given all of it careful study and consideration. However, the oral testimony in this case, in our judgment, establishes the following facts:

The appellee ordered the instant merchandise through its witness, Harry Marks, vice president of appellee, by a sketch drawn in the factory of the manufacturer of the instant merchandise (Exhibit 2). The entire order for the instant merchandise consisted of 1,200 dozen pieces. The shipments involved in reappraisements 112288–A and 112289–A were actually shipped to the appellee and sold by it to its

various customers in this country. Thereafter, complaints were made by many of said customers to the appellee that said merchandise was not first-class glassware and thereupon said appellee, through said Marks, who was then at the factory of the manufacturer, examined the balance of the shipments and refused to accept same because, as he contended, they were not manufactured in accordance with said specifications and therefore were not first-class glassware. He refused to take the balance of the order except the shipment covered by reappraisement 112290–A, which was ready to go forward to appellee. The manufacturer then and there agreed with Mr. Marks that said glassware was not according to the plans and specifications and therefore was not first-class glassware, and, by reason of this fact, reduced the price of the merchandise contained in the shipment in reappraisement 112290–A from 54 crowns per dozen pieces to 48 crowns. The said manufacturer also offered the balance of the unshipped merchandise to the said appellee for 30 crowns per dozen pieces but the said appellee refused to accept the balance of the shipment even at that price.

The witness, Julius Rosenfeld, president of the appellee, testified in part that several of his customers to whom he sold part of the instant importations returned all or part of said merchandise to the appellee and gave as a reason therefor that said merchandise was not first-class glassware, and the appellee agreed with said customers and accepted the return of same. He substantiated his testimony in this matter by producing in court his credit book giving these transactions. Said book was offered in evidence by the attorney for the appellee, but at the suggestion of the attorney for the appellant it was not filed as an exhibit on account of its encumbering the record, but it was agreed that the said book would be at the disposal of the attorney for the appellant at any time. A few of the customers who returned said glassware as above stated and which was accepted by the appellee for the reason it was not considered first-class glassware were:

| Name | Quantity returned (dozen) |
|---|---|
| L. Wertheimer (New York City) | 12 |
| People's Store of Chicago (Chicago) | 12 |
| Gimbel Bros. (New York City) | 12 |
| E. Atkins & Co. (Minneapolis) | 6 |
| Sears, Roebuck & Co. (Chicago) | 6 |
| Sears, Roebuck & Co. (Detroit) | 6 |
| G. & K. System (Massachusetts) | 6 |

Upon further examination of said credit book he found several others who returned said merchandise in smaller quantities for said reason, all of which appellee accepted.

The attorney for the appellant both in his argument of this case before the division and also in his brief filed with the division seems to criticize the opinion of Judge Sullivan, among other things, for the

reason that he did not, in the opinion of the attorney for the appellant, give Exhibits 4 and 5 the probative value that they deserved and in his brief states the following:

The real importance of the reports of Treasury Representatives herein (Exhibits 4 and 5) lies in the fact that while appellee's witnesses have testified that complaints based on quality were made to the factory by them as far back as 1935, then when Government Representative called at the factory to inquire about this particular merchandise for *this* importer in November 1935, no mention was made as to any complaints nor was any reason given for the lower price on the third shipment.

When said exhibits are thoroughly studied in the light of the testimony of the said Marks, it seems to us that there is no conflict at all, and a very good reason why neither Exhibit 4 nor 5 made any mention of the complaints of said Marks to the manufacturer as to the character of the merchandise or the reduction in price for the third shipment. Mr. Marks testified that his conversation was with the "director of the works." On page 2 of Exhibit 5, the Treasury representative states in part as follows: "* * * the director, Mr. Barta, who personally wrangles the prices with the purchasers" was absent. Therefore it can be seen that the director Barta, who agreed orally with Mr. Marks to cancel the balance of the order which was then not ready to be shipped and who also agreed to lower the price on the third shipment, was absent when the Treasury representative made his visit, as stated in said Exhibits 4 and 5. Therefore, the said Treasury representative did not see Mr. Barta at all.

Moreover, the said Barta in the second paragraph of his affidavit, Exhibit 3, further corroborates the testimony of Mr. Marks in that he made concessions for quality to the appellee from 54 crowns per dozen to 48 crowns per dozen in the last shipment reappraisement 112290–A.

There is no question in our minds, from a careful study of this entire record, and the evidence therein which we consider has probative value, that this glassware was not first-class quality. There is no evidence in the entire record that contradicts this fact. As stated before, the original order was for 1,200 dozen pieces of first-class glassware and when the witness Marks was at the factory and saw the defects and refused to take the entire output, 780 dozen of this entire order was canceled. Moreover, when complaint was made by the appellee to the manufacturer by said witness Marks, not only was the above amount of the order canceled, but a credit from 54 crowns to 48 crowns per dozen was given appellee in its last shipment, reappraisement 112290–A. Surely the manufacturer agreed with the appellee that the merchandise was not first class. Also, as stated before, the said Rosenfeld testified that many firms to which appellee had sold part of the instant importation returned same to appellee

and appellee agreed with them that it was not first-class glassware and credited said purchasers on their accounts. Most of these purchasers were outstanding American business firms and evidently they knew what first-class glassware was.

The attorney for the appellant claims that samples are potent witnesses, and therefore contends that by an ocular inspection of Exhibit 1, a part of these importations, and Illustrative Exhibits B, C, D, E, F, G, and H, which are conceded to be first-class glassware, it can be easily seen that Exhibit 1 is also first-class glassware. They are potent witnesses in many cases. We have carefully examined said exhibits in this case and, being laymen so far as the manufacture of glass is concerned, we are unable to guess, much less tell, whether Exhibit 1 is first-class glassware. Therefore, we have to rely upon the testimony of witnesses who have had years of experience in buying and selling this merchandise to decide the issue in this case, and the testimony of all the witnesses for appellee convinces us that they were qualified by years of experience to say whether or not Exhibit 1 was first-class glassware.

We have carefully considered Exhibits 4 and 5 and we agree with the conclusion reached by Judge Sullivan that, in view of the fact that the sole issue which we are called upon to decide is whether or not these importations were first class glassware, neither of said exhibits is of any probative value on this question.

We have given careful consideration to each assignment of error alleged by the attorney for the appellant and we conclude that no ruling of the court below, either upon admission of evidence or its refusal to do so, or the conclusions reached by the court below as to the merits of the case, would justify this division in reversing the judgment of Judge Sullivan.

We therefore find the following facts:

(1) That the merchandise covered by these reappraisements consists of glass oval relish dishes, not first grade or quality, but of inferior quality.

(2) That foreign value, as defined in section 402 (c) of the Tariff Act of 1930, is the correct basis for the determination of the value of the instant merchandise.

(3) That there is no export value for such or similar merchandise.

(4) That the correct dutiable values of the instant merchandise are the invoiced values, less freight to Hamburg of 16 Czechoslovakian crowns per 100 kilos.

We hold as a matter of law that the correct dutiable values of the instant merchandise are those found in finding of fact Number 4, as above set out, and that the judgment of the sitting judge in this case is hereby affirmed.

Judgment will be rendered accordingly.